## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT LEE WINHAUER, JR. | ) | |
| Individually and as Executor of the Estate | ) | |
| of ROBERT LEE WINHAUER, and on | ) | |
| behalf of all Wrongful Death beneficiaries, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-00177-RGA-SRF |
| | ) | |
| AIR & LIQUID SYSTEMS | ) | |
| CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

Presently, there are nine motions for summary judgment before the court in this asbestos-related personal injury action.  The motions were filed by Defendants, John Crane, Inc. ("JCI") (D.I. 150), Crane Co. ("Crane") (D.I. 157), Flowserve US Inc. ("Flowserve") (D.I. 159), Carver Pump Co. ("Carver") (D.I. 163), Sterling Fluid Systems (USA) LLC ("Sterling") (D.I. 166), FMC Corp. ("FMC") (D.I. 169), Velan Valve Corp. ("Velan") (D.I. 171), Borg-Warner Morse Tec LLC ("Borg") (D.I. 173), and Cleaver-Brooks Inc. ("Cleaver") (D.I. 177) (collectively "Defendants").[1]  As indicated in the chart *infra* and for the reasons set forth below, the court recommends granting Defendants' motions for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| John Crane, Inc. | GRANT |
| Flowserve US, Inc. | GRANT |

---

[1] Additional defendants also filed motions for summary judgment in this action.  However, the opposed motions filed by Ingersoll Rand Co. and Honeywell International, Inc. will be addressed separately.  (D.I. 165, 175) The remaining motions have been terminated.  (D.I. 152, 155, 161, 162)

| Carver Pump Co. | GRANT |
| Velan Valve Corp. | GRANT |
| Cleaver-Brooks Inc. | GRANT |
| Sterling Fluid Systems (USA) LLC | GRANT |
| FMC Corp. | GRANT |
| Crane Co. | GRANT |
| Borg-Warner Morse Tec LLC | GRANT |

## II.    BACKGROUND

### A. Procedural History

Robert Lee Winhauer filed this asbestos action in the Delaware Superior Court against

multiple defendants on December 18, 2014, asserting claims regarding alleged wrongful

exposure to asbestos. (D.I. 1, Ex. 1) Defendant Crane removed the action to this court on

February 23, 2015. (D.I. 1) After Mr. Winhauer's death, the complaint was amended to

substitute a representative of Mr. Winhauer's estate as the plaintiff, and to add a wrongful death

claim. (D.I. 180)

JCI filed it motion for summary judgment on March 3, 2016. (D.I. 150) The remaining

Defendants filed their respective motions on March 4, 2016. (D.I. 152, 155, 157, 159, 161–163

166, 169, 171, 173) Plaintiff did not respond to the motions.

### B. Facts

Plaintiff alleges that Mr. Winhauer developed mesothelioma as a result of exposure to

asbestos-containing products while performing personal automotive maintenance work from the

1940's through the 1990's, during his course of employment at Ingalls Shipyard in Pascagoula,

Mississippi from 1965 to 1976, and while working at Courtaulds North America Rayon Staple

Plant ("Courtaulds") in Le Moyne, Alabama from 1977 to 1998. (D.I. 180 at ¶ 32) Plaintiff

asserts that Defendants manufactured, sold, distributed, or designed the products at issue, which allegedly contained, or were designed for use with, asbestos-containing products. (*Id.* at ¶ 38)

Mr. Winhauer testified regarding his alleged asbestos exposure at a deposition on February 3, 2015. (D.I. 188, Ex. 1) He is the sole product identification witness in this action. Mr. Winhauer testified that he went to work at the Ingalls Shipyard in Pascagoula, Mississippi from 1965 to 1976. (*Id.* at 15:22–16:5) He started as a pipefitter and later became a pipefitter supervisor, working on planning and installation of pipes on new construction projects. (*Id.* at 17:2–18:4, 33:20–22) His work included installing gaskets on the pipes, using gaskets to join pipes together, and installing pumps and valves on the pipes. (*Id.* at 17:2–21:15) He also testified that he often worked around insulators who were installing insulation in engine rooms. (*Id.* at 29:10–13) Mr. Winhauer worked on freighter ships, the USS Tarawa, and on some destroyers while at Ingalls Shipyard. (*Id.* at 18:9–19:7)

In 1977, Mr. Winhauer moved to Courtaulds in Le Moyne, Alabama, where he worked as a maintenance mechanic until 1998. (*Id.* at 32:7–18) There, he worked on pipes, pumps, valves, and insulation. (*Id.* at 32:19–23) Mr. Winhauer did repair work at Courtaulds, unlike his work with new construction at Ingalls Shipyard. (*Id.* at 33:20–22)

Finally, Mr. Winhauer testified that he was exposed to asbestos-containing products while conducting maintenance to his personal vehicles. (*Id.* at 60–84) He explained that he worked on about twelve different vehicles throughout his life, performing brake, engine, generator, and clutch repairs. (*Id.*)

### 1. JCI, Flowserve, Carver, Velan, Cleaver

Although named in the complaint, Mr. Winhauer did not identify work with an asbestos-containing JCI, Flowserve, Carver, Velan, or Cleaver product at either Ingalls Shipyard or Courtaulds. (*See* D.I. 188, Ex. 1, Ex. 2) Plaintiff does not dispute this fact.

### 2. Sterling

Sterling was formerly known as Peerless Pump Co. ("Peerless"). (D.I. 167 at 1) Sterling is not responsible for Peerless products manufactured before July 31, 1976, when FMC engaged in the manufacture and sale of Peerless products. (*Id.* at 1 n.2) Sterling also asserts that it did not manufacture Peerless products prior to 1988. (*Id.*)

Mr. Winhauer testified that he did not work on pumps while employed at Ingalls Shipyard. (D.I. 188, Ex. 1 at 52:1–2) He did do repair work on pumps at Courtaulds, including changing them out, repacking them, and replacing the gaskets on the pumps. (*Id.* at 49:6–22) He remembered frequently using Peerless pumps during his time at Courtaulds, as he worked on pumps at least once a week while employed there. (*Id.* at 52:20–53:12) However, Mr. Winhauer did not do work on any new pumps at Courtaulds; rather, he only did maintenance work to pumps already in place. (*Id.* at 51:7–13) He did not know the manufacturer of any of the packing or gaskets used in repairing the pumps. (*Id.*, Ex. 2 at 91:11–94:1) Additionally, Mr. Winhauer testified that he could not provide details with respect to any specific pump, and he did not know the frequency to which he worked with particular brands. (*Id.* at 96:2–97:12)

### 3. FMC

FMC engaged in the manufacture and sale of Peerless pumps from 1933 until the Peerless business was sold in 1976. (D.I. 170 at 1 n.2) FMC is also sued as a successor-in-interest to Chicago Pump Co. ("Chicago"). (D.I. 180 at ¶ 14) As explained *supra*, Mr. Winhauer testified that he worked on Peerless pumps while employed at Courtaulds, but he could not identify

4

specifics with respect to any pump brand. *See* § II(B)(2). Mr. Winhauer testified that he did not remember working with any Chicago product. (D.I. 188, Ex. 1 at 52:15–18)

### 4. Crane

When prompted by counsel, Mr. Winhauer responded affirmatively when asked if he remembered Crane valves. (*Id.*, Ex. 1 at 22:1–3) He answered that the name was familiar, and also that he would have installed gaskets on the valves. (*Id.* at 22:1–9) Mr. Winhauer stated that he would have used Crane valves infrequently at Ingalls Shipyard, but he would have "[a]bsolutely" and "[f]requently" used them at Courtaulds, where he would also change the gaskets on the valves. (*Id.*, Ex. 2 at 32:11–14; 43:13–44:1) However, Mr. Winhauer could not give a specific location or application where he used Crane valves. (*Id.* at 128:10–13) He also did not know the color, pressure rating, or temperature rating of Crane valves. (*Id.* at 129:5–15) He further testified that he would not know if Crane ever specified that asbestos be used with their valves. (*Id.* at 130:19–23)

### 5. Borg

Mr. Winhauer testified about Borg clutches with respect to performing maintenance on his personal vehicles. Counsel asked if he remembered working with a Borg clutch, and Mr. Winhauer replied that he used a Borg clutch on his Ford F150. (*Id.*, Ex. 1 at 82:23–83:14) However, Mr. Winhauer later testified that he did not remember mentioning Borg, and that he did not remember who manufactured the clutch he replaced on his vehicle. (*Id.*, Ex. 2 at 156:23–157:9) He later reiterated that he did not remember if he used a Borg clutch on the clutch job. (*Id.* at 171:15–20)

### III.  STANDARD OF REVIEW

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). The non-movant must support its contention by citing to particular documents in the record, by showing that the cited materials do not establish the absence or presence of a genuine dispute, or by showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)–(B). The existence of some alleged factual dispute may not be sufficient to deny a motion for summary judgment; rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247–49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Clark v. Welch*, Civ. NO.14-029-SLR, 2016 WL 859259, at *2 (D. Del. Mar. 3, 2016). If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

6

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).[2] However, even where a party does not file a responsive submission to oppose the motion, the court must still find that the undisputed facts warrant judgment as a matter of law. *Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). "In other words, the [court] 'must determine that the deficiencies in the opponent's evidence designated in or in conjunction with the motion entitle the moving party to judgment as a matter of law.'" *Id.* (quoting *Anchorage Assocs. v. Virgin Islands Board of Tax Review*, 922 F.2d 168, 175 (3d Cir.1990)).

### B. Mississippi Law

A federal court sitting in diversity is "required to apply the substantive law of the state whose laws govern the action." *Robertson v. Allied Signal*, 914 F.2d 360, 378 (3d Cir. 1990). Consequently, the parties agree that Mississippi substantive law applies to this action. (D.I. 144)

---

[2] This section was added to Rule 56 to overcome cases in the Third Circuit that impaired the utility of the summary judgment device:

> A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matters sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue.

Fed. R. Civ. P. 56(e) advisory committee's note. Before the amendment, the Third Circuit would have denied summary judgment if the averments were "well-pleaded," and not conclusory. *Id.* However, the Advisory Committee noted that summary judgment is meant to pierce the pleadings and to assess proof to see whether there is a genuine need for trial. *Id.* Accordingly, the pre-amendment Third Circuit precedent was incompatible with the basic purpose of the rule. *Id.* The amendment recognizes that, "despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The amendment, however, was not designed to affect the ordinary standard applicable to summary judgment. *Id.*

### 1. Product Identification

Mississippi courts apply the "frequency, regularity, and proximity" test in evaluating a plaintiff's asbestos-related claims. *Monsanto Co. v. Hall*, 912 So. 2d 134, 137 (Miss. 2005) (citing *Gorman-Rupp Co. v. Hall*, 908 So. 2d 749, 757 (Miss. 2005) (holding that a plaintiff must show: (1) he worked with or around a particular defendant's product, (2) with sufficient frequency and regularity, (3) in proximity to where he actually worked, (4) and that it was probable his alleged exposure to that defendant's product caused his injury)). As such, Plaintiff must use this standard to show identification of Defendants' products, Mr. Winhauer's exposure to those products, and causation as to his injuries. *Id.* Summary judgment is appropriate if Plaintiff fails to meet the burden of proving product identification, exposure, or causation under the frequency, regularity, and proximity test. *See Gorman-Rupp*, 908 So. 2d at 757 (granting summary judgment where the plaintiff failed establish causation); *Monsanto*, 912 So. 2d at 137 (granting summary judgment where the plaintiff failed to identify exposure to any particular product).

### 2. Product Liability

Products liability actions in Mississippi are governed by the Mississippi Products Liability Act ("MPLA"). The MPLA provides that to bring a claim for strict liability, a plaintiff must prove that at the time the product left the control of the manufacturer or seller, the product contained a manufacturing defect, design defect, inadequate warnings, or the product breached an express warranty. Miss. Code Ann. § 11-1-63(a) (2014). Plaintiff must also show that the defect rendered the product unreasonably dangerous and that the condition of the product proximately caused the damages for which recovery is sought. *Id.*

Under the MPLA, a product may be found defective if it "fail[s] to contain adequate

8

warnings."[3]  § 11-1-63(a)(i)(2).  As such, manufacturers and sellers have a duty to warn of

known hazards associated with the use of their products.  *See Dalton*, 2013 WL 4886658, at *9

(citing *Scordino v. Hopeman Bros.*, 662 So. 2d 640, 646 (Miss. 1995)).  However, manufacturers

and sellers only have a duty to warn of dangers known to them at the time the product leaves his

or her control.  *See Noah v. GMC*, 882 So. 2d 235, 239 (Miss. Ct. App. 2004), *cert. denied*, 882

So. 2d 772 (Miss. 2004).  Plaintiff must show that at the time the product left the control of the

manufacturer or seller, the manufacturer or seller knew or should have known about the danger,

and "the ordinary user...would not realize its dangerous condition."  § 11-1-63(c)(i).  The failure

to warn must be the proximate cause of the injuries suffered.  *3M Co. v. Johnson*, 895 So. 2d

151, 166 (Miss. 2005) (citing *Garner v. Santoro*, 865 F.2d 629, 641–42 (5th Cir. 1989)).  That

causal link between the alleged injury and the inadequate warning is key to a plaintiff's claim.

*Id.*

        A claim for failure to warn may be based on a theory of negligence or strict liability.

*O'Flynn v. Owens-Corning Fiberglas*, 759 So. 2d 526, 535 (Miss. Ct. App. 2000).  "The strict

liability in tort theory is derived from *State Stove Manufacturing Co. v. Hodges*, and Section

402A of the Restatement (Second) of Torts."  *Id.*; *see also Scordino*, 662 So. 2d at 642; *Coca

Cola Bottling Co. v. Reeves*, 486 So. 2d 374, 377 (Miss. 1986); *State Stove Mfg. Co. v. Hodges*,

189 So. 2d 113, 118 (Miss. 1966), *cert. denied*, 386 U.S. 912 (1967).  By proving the required

elements in a failure to warn cause of action,

---

[3] The MPLA defines an adequate warning as:

> one that a reasonably prudent person in the same or similar circumstances would
> have provided with respect to the danger and that communicates sufficient
> information on the dangers and safe use of the product, taking into account the
> characteristics of, and the ordinary knowledge common to an ordinary consumer
> who purchases the product[.]

§ 11-1-63(c)(ii).

the plaintiff is in effect proving that the defendant was negligent in its failure to warn. Hence, even though the cause of action for failure to warn could be based on negligence or strict liability in tort, the two theories, while conceptually different, often merge into a single breach of duty.

*O'Flynn, 759 So. 2d at 535.* (citation omitted). Section 402A defines who may be liable for a

defective product as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused…if:
      (a) the seller is engaged in the business of selling such a product, and
      (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A (1965). It follows that under § 402A, one who neither

manufactures nor sells the product can be liable under a products liability theory. *Dalton v. 3M*

*Co.*, Civil Action No. 10-113-SLR-SRF, 2013 WL 4886658, at *8 (D. Del. Sept. 12, 2013),

*report and recommendation adopted*, 2013 WL 5486813 (D. Del. Oct. 1, 2013) (citing *Scordino*,

662 So. 2d at 643) (quoting *Harmon v. Nat'l Auto. Parts Ass'n*, 720 F. Supp. 79, 80 (N.D. Miss.

1989))).

### 3. Bare Metal Defense

Although Mississippi courts have not yet addressed the bare metal defense, this court has

previously found that based on the MPLA, § 402A, and case authority that, "it is reasonably

likely that the Supreme Court of Mississippi would follow the majority of jurisdictions that have

refused to find defendants liable for other manufacturers' asbestos products." *Dalton*, 2013 WL

4886658, at *10 (citing *Murray v. General Motors, LLC*, 478 Fed. App'x 175, 182 (5th Cir.

2012) (there is no post-sale duty to warn under Mississippi law); *Scordino*, 662 So. 2d at 643

(strict liability depends on whether defendant is a manufacturer or seller of a product); *Harmon*,

720 F. Supp. at 80 (strict liability is not imposed on one who neither manufactures nor sells the

products)).

The bare metal defense applies to shield defendants from liability for injuries caused by asbestos components where the defendant neither manufactured nor supplied the product that allegedly caused the plaintiff to be exposed to asbestos. *Id*. at \*6–7 (citing *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 793 (E.D. Pa. 2012)). Accordingly, courts embracing the principles of the bare metal defense refuse to impose liability upon manufacturers for dangers associated with asbestos-containing products manufactured and distributed by other entities. *Id*. at \*7 (citing *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 495 (6th Cir. 2005); *Conner*, 842 F. Supp. 2d at 801; *Surre v. Foster Wheeler LLC*, 831 F. Supp. 2d 797, 801 (S.D.N.Y. 2011); *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 1030 (S.D. Ill. 1989); *O'Neil v. Crane Co.*, 266 P.3d 987, 997–98 (Cal. 2012); *Taylor v. Elliott Turbomachinery Co.*, 90 Cal. Rptr. 3d 414, 429 (Cal. Ct. App. 2009); *In re Asbestos Litig. (Howton)*, C.A. No. N11C-03218 ASB, 2012 WL 1409011, at \*1 (Del. Super. Ct. Apr. 2, 2012); *In re Asbestos Litig. (Wolfe)*, C.A. No. No10C-08-258 ASB, 2012 WL 1415706, at \*3–4 (Del. Super. Ct. Feb. 28, 2012); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 498–99 (Wash. 2008); *Simonetta v. Viad Corp.*, 197 P.3d 127, 134–35 (Wash. 2008)). Therefore, a manufacturer is not subject to a duty to warn or protect against hazards arising from a product it did not manufacture, supply, or sell. *Id*. at \*10.

## IV. DISCUSSION

Product identification is a threshold question in in this case: Plaintiff must show that Defendants' products proximately caused Mr. Winhauer's injuries. *See Dependable Abrasives, Inc. v. Pierce*, 156 So. 3d 891, 896 (Miss. 2015) (quoting *Banks ex rel. Banks v. Sherwin–Williams Co*., 134 So. 3d 706, 710 (Miss. 2014)). To survive a motion for summary judgment under Mississippi law, Plaintiff must show that Mr. Winhauer was exposed to Defendants'

asbestos-containing products with the requisite frequency, regularity, and proximity. *See Gorman-Rupp Co. v. Hall*, 908 So. 2d 749, 757 (Miss. 2005).

## A. Defendants JCI, Flowserve, Carver, Velan, and Cleaver

The court recommends granting JCI's, Flowserve's, Carver's, Velan's, and Cleaver's motions for summary judgment because there is no genuine issue of material fact in dispute as to whether Mr. Winhauer was exposed to an asbestos-containing product made by these parties. Because Plaintiff did not produce any evidence whatsoever tending to establish exposure to these parties' products, Plaintiff cannot meet Mississippi's frequency, regularity, and proximity threshold product nexus requirement. Therefore, the court recommends granting summary judgment in favor of JCI, Flowserve, Carver, Velan, and Cleaver.

## B. Defendant Sterling

The court recommends granting Sterling's motion for summary judgment. Sterling asserts that the record does not show that a Sterling product was the source of Mr. Winhauer's exposure. (D.I. 167 at 6–8) Although Mr. Winhauer testified that he remembered working with Peerless pumps, a brand acquired by Sterling, he did not remember any specifics about that work. (*Id.* at 8) Additionally, he did not testify to using asbestos-containing packing or gasket material supplied by Sterling in repairing the pumps.[4] (*Id.*) Therefore, Sterling contends that summary judgment should be granted in its favor.

For the court to deny the summary judgment motion, Plaintiff must have shown that: (1) Mr. Winhauer was exposed to a particular asbestos-containing Sterling-made product, (2) with sufficient frequency and regularity, (3) in proximity to where he worked, (4) such that it is

---

[4] Mr. Winhauer testified that the packing and gasket materials he used when repairing pumps included Garlock brand, or other packing material supplied by his employer. (D.I. 188, Ex. 1 at 49:12–50:11; Ex. 2 at 91:20–95:12)

12

probable that the exposure to Sterling's product caused Mr. Winhauer's injuries. *Dalton v. 3M Co.*, Civil Action No. 10-113-SLR-SRF, 2013 WL 4886658, at \*7 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (D. Del. Oct. 1, 2013) (citing *Gorman-Rupp*, 908 So. 2d at 757; *Monsanto Co. v. Hall*, 912 So. 2d 134, 136–37 (Miss. 2005)).

The record reflects that Mr. Winhauer worked on thousands of pumps, at least once a week. (D.I. 188, Ex. 1 at 52:24–53:12) Although some of that work could have been with Peerless pumps, the lack of specificity in his testimony is insufficient to show causation. Mr. Winhauer could not identify any specific location, particular application, operating parameters, or frequency with which he worked with any pump brand, including Peerless. (*Id.*, Ex. 2 at 96:2–97:12) Additionally, Mr. Winhauer did not know if he ever removed any originally installed components, like packing or gaskets, from the pumps. (*Id.* at 91:11–93:5) He also never viewed any specifications that designated the use of any asbestos-containing materials on any pump, regardless of manufacturer. (*Id.* at 111:3–15)

Moreover, Sterling asserts that it did not manufacture asbestos-containing Peerless pumps until the 1980's, and because Plaintiff does not refute this statement, the court will accept the fact as undisputed. *See* Fed. R. Civ. P. 56(e). (D.I. 167 at 1 n.2) Accordingly, because Mr. Winhauer testified that any Peerless pump he may have repaired would already have been installed by the time he started working at Courtaulds in 1977, there is no evidence to support the assertion that Sterling is responsible for the Peerless pumps Mr. Winhauer alleges he was exposed to. (D.I. 188, Ex. 1 at 51:7–10)

Finally, Sterling proposes that even if Mr. Winhauer could sufficiently identify work with an asbestos-containing Peerless product, the bare metal defense applies. (D.I. 167 at 8–10) The bare metal defense protects Sterling from liability "for injuries caused by asbestos components,

13

such as insulation, gaskets, and packing, that were incorporated into [its] products or used as replacement parts, but which [it] did not manufacture or distribute." *Dalton v. 3M Co.*, Civil Action No. 10-113-SLR-SRF, 2013 WL 4886658, at *6 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (D. Del. Oct. 1, 2013) (quoting *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 796 (E.D. Pa. Feb. 1, 2012)). In the present action, there is a complete lack of evidence to show that Sterling supplied any asbestos-containing product or instructed its customers to insulate Peerless pumps with asbestos-containing products. Therefore, Plaintiff fails to meet his burden of establishing a prima facie case of product identification, exposure, and causation under Mississippi law, and summary judgment should be granted in Sterling's favor.

### C. Defendant FMC

Similarly, the court recommends granting FMC's motion for summary judgment. As explained *supra*, the record does not reflect sufficient exposure to Peerless pumps under Mississippi product identification standards. *See* § IV(B). Mr. Winhauer did not begin working on Peerless pumps until he started at Courtaulds in 1977. (D.I. 188, Ex. 1 at 32:7–18, 52:20–53:12) FMC sold Peerless in 1976. (D.I. 170 at 1 n.2) Additionally, Mr. Winhauer explicitly testified that he did not remember working with Chicago pumps, a brand to which FMC is a successor-in interest. (D.I. 188, Ex. 1 at 52:15–18) Therefore, summary judgment should be granted in FMC's favor, as there is no genuine issue of material fact in dispute, and the court should grant judgment as a matter of law.

### D. Defendant Crane

The court recommends granting Crane's motion for summary judgment. Crane avers that the Crane valves Mr. Winhauer alleges occupational exposure to were made of metal, not

asbestos, so they were not a substantial factor in causing his injury. (D.I. 158 at 4) Additionally, Crane raises the bare metal defense. (*Id.* at 5) It contends that it is not responsible for any asbestos-containing gaskets manufactured by other parties, which Mr. Winhauer alleges he used to repair Crane valves. (*Id.*)

Although Mr. Winhauer testified that he would have used Crane valves "frequently" while working at Courtaulds, Plaintiff failed to rebut the assertion that the Crane valves at issue did not contain asbestos. (D.I. 188, Ex. 1 at 43:13–44:1) Furthermore, Mr. Winhauer could not remember any specifics regarding his exposure to any particular valve brand. *See* § IV(D). Finally, under the bare metal defense, Crane is not responsible for asbestos-containing products applied to valves that Crane did not manufacture, sell, or distribute. *See Dalton v. 3M Co.*, Civil Action No. 10-113-SLR-SRF, 2013 WL 4886658, at *6–7 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (D. Del. Oct. 1, 2013). Consequently, there is insufficient evidence to maintain the causal nexus required by Mississippi law, and summary judgment should be granted in Crane's favor.

### E. Defendant Borg

Borg's motion for summary judgment should be granted. Borg contends that at most, the record establishes that Mr. Winhauer may have been exposed only to one asbestos-containing Borg clutch. (D.I. 174 at 4–5) Such exposure does not rise to the level of frequency, regularity, or proximity required by Mississippi law. (*Id.*)

Mr. Winhauer first testified that he did not remember doing any clutch work on any car. (D.I. 188, Ex. 1 at 82:11–14) However, in response to leading questions by his counsel, he testified:

> Q: You told me you had done some clutch work before—
> A: Yes.

15

Q: —with a Bork Warner clutch?
A: Yes.
…
Q: Do you remember what year you changed the clutch out?
A: No I don't.
Q: And that was—the F150 was the '70's right?
A: Yes.

(*Id.* at 82:23–83:14) Mr. Winhauer only identified Borg when prompted by his counsel. He did

not remember doing any other clutch work, and later in the deposition, he stated that he did not

remember ever mentioning Borg or who manufactured the clutch he repaired. (*Id.*, Ex. 2 at

156:23–157:9) On redirect, his counsel again asked him if he remembered the clutch being

manufactured by Borg, to which Mr. Winhauer responded, "No." (*Id.* at 171:15–23) Given this

testimony, Mr. Winhauer may have worked with an asbestos-containing Borg clutch, at most,

one time. However, his testimony is inconsistent and it does not amount to frequent, regular

exposure that gives rise to an inference of causation. Therefore, the court recommends granting

Borg's motion for summary judgment.

## V.    CONCLUSION

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends

granting Defendants' motions for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| John Crane, Inc. | GRANT |
| Flowserve US, Inc. | GRANT |
| Carver Pump, Co. | GRANT |
| Velan Valve Corp. | GRANT |
| Cleaver-Brooks Inc. | GRANT |
| Sterling Fluid Systems (USA) LLC | GRANT |
| FMC Corp. | GRANT |
| Crane Co. | GRANT |
| Borg-Warner Morse Tec LLC | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July **13**, 2016

Sherry R. Fallon
United States Magistrate Judge

17