IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT LEE WINHAUER, JR. Individually and as Executor of the Estate of ROBERT LEE WINHAUER, and on behalf of all Wrongful Death beneficiaries, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )     Civil Action No. 15-00177-RGA-SRF ) |
| AIR & LIQUID SYSTEMS CORPORATION, et al. | ) ) ) ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

Presently, there are two motions for summary judgment before the court in this asbestos-related personal injury action.  The motions were filed by Defendants, Ingersoll Rand Co. ("Ingersoll") (D.I. 165), and Honeywell International, Inc. ("Honeywell") (D.I. 175), (collectively "Defendants").[1]  For the reasons set forth below, the court recommends granting Defendants' motions for summary judgment.

### II.   BACKGROUND

#### A. Procedural History

Robert Lee Winhauer filed this asbestos action in the Delaware Superior Court against multiple defendants on December 18, 2014, asserting personal injury claims proximately caused

---

[1] Additional defendants also filed motions for summary judgment in this action.  The motions filed by John Crane, Inc., Flowserve US, Inc., Carver Pump. Co, Velan Valve Corp., Cleaver-Brooks Inc., Sterling Fluid Systems (USA) LLC, FMC Corp., Crane Co., and Borg-Warner Morse Tec LLC were addressed separately by the court.  (D.I. 150, 157, 159, 163, 166, 169, 171, 173, 177) The remaining motions have since been terminated.  (D.I. 152, 155, 161, 162)

by alleged wrongful exposure to asbestos. (D.I. 1, Ex. 1) Defendant Crane Co. removed the action to this court on February 23, 2015. (D.I. 1) After Mr. Winhauer's death, the complaint was amended to substitute a representative of Mr. Winhauer's estate as the plaintiff, and to add a wrongful death claim. (D.I. 180)

Defendants filed their respective motions for summary judgment on March 4, 2016. (D.I. 165, 175) Plaintiff opposes the motions. (D.I. 189, 188)

**B. Facts**

Plaintiff alleges that Mr. Winhauer developed mesothelioma as a result of exposure to asbestos-containing products while performing personal automotive maintenance work from the 1940's through the 1990's, during his course of employment at Ingalls Shipyard in Pascagoula, Mississippi from 1965 to 1976, and while working at Courtaulds North America Rayon Staple Plant ("Courtaulds") in Le Moyne, Alabama from 1977 to 1998. (D.I. 180 at ¶ 32) Plaintiff asserts that Defendants manufactured, sold, distributed, or designed the products at issue, which allegedly contained, or were designed for use with, asbestos-containing products. (*Id.* at ¶ 38)

Mr. Winhauer testified regarding his alleged asbestos exposure at a deposition on February 3, 2015. (D.I. 188, Ex. 1) He is the sole product identification witness in this action. Mr. Winhauer testified that he went to work at the Ingalls Shipyard in Pascagoula, Mississippi from 1965 to 1976. (*Id.* at 15:22–16:5) He started as a pipefitter and later became a pipefitter supervisor, working on planning and installation of pipes on new construction projects. (*Id.* at 17:2–18:4, 33:20–22) His work included installing gaskets on the pipes, using gaskets to join pipes together, and installing pumps and valves on the pipes. (*Id.* at 17:2–21:15) He also testified that he often worked around insulators who were installing insulation in engine rooms.

(*Id.* at 29:10–13) Mr. Winhauer worked on freighter ships, the USS Tarawa, and on some destroyers while at Ingalls Shipyard. (*Id.* at 18:9–19:7)

In 1977, Mr. Winhauer moved to Courtaulds in Le Moyne, Alabama, where he worked as a maintenance mechanic until 1998. (*Id.* at 32:7–18) There, he worked on pipes, pumps, valves, and insulation. (*Id.* at 32:19–23) Mr. Winhauer did repair work at Courtaulds, unlike his work with new construction at Ingalls Shipyard. (*Id.* at 33:20–22)

Finally, Mr. Winhauer testified that he was exposed to asbestos-containing products while conducting maintenance to his personal vehicles. (*Id.* at 60–84) He explained that he worked on about twelve different vehicles throughout his life, performing brake, engine, generator, and clutch repairs. (*Id.*)

### 1. Honeywell

Honeywell was formerly known as Allied-Signal, Inc., and it is a successor-in-interest to Bendix Corporation ("Bendix"). (D.I. 180 at ¶ 18) Honeywell sold asbestos-containing Bendix brakes from 1939 to 2001. (D.I. 188, Ex. 6) Mr. Winhauer testified that he used either Bendix or remanufactured brakes when doing brake work on his twelve personal automobiles. (*Id.*, Ex. 1 at 71:7–72:23) Although he knew some of the brakes he worked with were Bendix brand, he could not provide any details as to the amount, make, or model of the cars on which he recalled installing Bendix brakes. (*Id.*, Ex. 2 at 165:10–166:20, 168:13–19)

### 2. Ingersoll

Mr. Winhauer testified that he did infrequent maintenance work to air compressors while employed by Courtaulds. (*Id.* at 148:11–25, Ex. 1 at 39:8–41:8) He could not recall the name of the manufacturer of the compressors, but he answered affirmatively when counsel asked if they were Ingersoll compressors. (*Id.*, Ex. 1 at 39:41–51:8) Later, however, he testified that Allis

3

Chalmers manufactured the air compressors, and he knew that because it was written on the compressors. (*Id.*, Ex. 2 at 151:2–14) On redirect, though, Mr. Winhauer's counsel asked if the air compressors were manufactured by Ingersoll or Allis Chalmers, and he stated he was "pretty sure" they were manufactured by Ingersoll. (*Id.* at 170:24–171:14)

## III.     STANDARD OF REVIEW

### A.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). The non-movant must support its contention by citing to particular documents in the record, by showing that the cited materials do not establish the absence or presence of a genuine dispute, or by showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)–(B). The existence of some alleged factual dispute may not be sufficient to deny a motion for summary

judgment; rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247–49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Clark v. Welch*, Civ. NO.14-029-SLR, 2016 WL 859259, at \*2 (D. Del. Mar. 3, 2016). If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).[2] However, even where a party does not file a responsive submission to oppose the motion, the court must still find that the undisputed facts warrant judgment as a matter of law. *Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). "In other words, the [court] 'must determine that the deficiencies in the opponent's evidence designated in or in conjunction with the motion

---

[2] This section was added to Rule 56 to overcome cases in the Third Circuit that impaired the utility of the summary judgment device:

> A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matters sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue.

Fed. R. Civ. P. 56(e) advisory committee's note. Before the amendment, the Third Circuit would have denied summary judgment if the averments were "well-pleaded," and not conclusory. *Id.* However, the Advisory Committee noted that summary judgment is meant to pierce the pleadings and to assess proof to see whether there is a genuine need for trial. *Id.* Accordingly, the pre-amendment Third Circuit precedent was incompatible with the basic purpose of the rule. *Id.* The amendment recognizes that, "despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The amendment, however, was not designed to affect the ordinary standard applicable to summary judgment. *Id.*

entitle the moving party to judgment as a matter of law.'" *Id.* (quoting *Anchorage Assocs. v. Virgin Islands Board of Tax Review,* 922 F.2d 168, 175 (3d Cir.1990)).

## B. Mississippi Law

A federal court sitting in diversity is "required to apply the substantive law of the state whose laws govern the action." *Robertson v. Allied Signal*, 914 F.2d 360, 378 (3d Cir. 1990). Consequently, the parties agree that Mississippi substantive law applies to this action.  (D.I. 144)

### 1.  Product Identification

Mississippi courts apply the "frequency, regularity, and proximity" test in evaluating a plaintiff's asbestos-related claims. *Monsanto Co. v. Hall*, 912 So. 2d 134, 137 (Miss. 2005) (citing *Gorman-Rupp Co. v. Hall*, 908 So. 2d 749, 757 (Miss. 2005) (holding that a plaintiff must show: (1) he worked with or around a particular defendant's product, (2) with sufficient frequency and regularity, (3) in proximity to where he actually worked, (4) and that it was probable his alleged exposure to that defendant's product caused his injury)).  As such, Plaintiff must use this standard to show identification of Defendants' products, Mr. Winhauer's exposure to those products, and causation as to his injuries.  *Id.* Summary judgment is appropriate if Plaintiff fails to meet the burden of proving product identification, exposure, or causation under the frequency, regularity, and proximity test. *See Gorman-Rupp*, 908 So. 2d at 757 (granting summary judgment where the plaintiff failed establish causation); *Monsanto*, 912 So. 2d at 137 (granting summary judgment where the plaintiff failed to identify exposure to any particular product).

Plaintiff argues that these factors are to be applied "less rigidly" in cases involving mesothelioma.[3] In support of this claim, Plaintiff relies on two main cases from the Seventh Circuit and the state court in New Jersey: *Tragarz v. Keene Corp.*, 980 F.2d 411, 421 (7th Cir. 1992) and *Kurak v. A.P. Green Refractories Co.*, 689 A.2d 757, 765–66 (N.J. Super. Ct. App. Div. 1997). However, those courts do not apply Mississippi law. *See Tragarz*, 980 F.2d at 417; *Kurak*, 689 A.2d at 761–62. Additionally, courts within the Third Circuit have expressly declined to follow these cases, refusing to adjust the frequency, regularity, and proximity standard. *See, e.g., Guffey v. A.W. Chesterton Co.*, MDL No. 875, E.D. PA Civil Action No. 2:11-67213-ER, 2012 WL 5395035, at * 1 (E.D. Pa. Aug. 28, 2012) (declining to follow *Tragarz*); *Barnes v. Foster Wheeler Corp.*, Civ. No. 13-1285 JBS, 2014 WL 2965699, at *3–4 (D.N.J. June 30, 2014) (distinguishing the case from *Kurak*). In addressing exposure to asbestos-containing products, Mississippi courts have not distinguished between different asbestos-related diseases when applying the frequency, regularity, and proximity test. *See Gorman-Rupp*, 908 So. 2d at 757 (finding that the frequency, regularity, and proximity test is the proper standard to apply in asbestos cases); *see also Monsanto*, 912 So. 2d at 136–37 ("[I]n asbestos litigation cases, the frequency, regularity, and proximity test is the proper standard in determining exposure and proximate cause."). Moreover, this court has used the frequency, regularity, and proximity standard when applying Mississippi substantive law to a mesothelioma case. *See Dalton v. 3M Co.*, Civil Action No. 10-113-SLR-SRF, 2013 WL 4886658, at *4–7 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (D. Del. Oct. 1, 2013).

---

[3] Plaintiff argues that "there is no threshold level of exposure required for the development of mesothelioma" and therefore even a minimal exposure should satisfy the frequency, regularity, and proximity requirements. (D.I. 188 at 16–17; D.I. 189 at 10–12)

7

Therefore, the court will address the product identification analysis based on the accepted frequency, regularity, and proximity standard.

## 2.  Product Liability

Products liability actions in Mississippi are governed by the Mississippi Products Liability Act ("MPLA").  The MPLA provides that to bring a claim for strict liability, a plaintiff must prove that at the time the product left the control of the manufacturer or seller, the product contained a manufacturing defect, design defect, inadequate warnings, or the product breached an express warranty.  Miss. Code Ann. § 11-1-63(a) (2014).  Plaintiff must also show that the defect rendered the product unreasonably dangerous and that the condition of the product proximately caused the damages for which recovery is sought.  *Id.*

Under the MPLA, a product may be found defective if it "fail[s] to contain adequate warnings."[4]  § 11-1-63(a)(i)(2).  As such, manufacturers and sellers have a duty to warn of known hazards associated with the use of their products.  *See Dalton*, 2013 WL 4886658, at *9 (citing *Scordino v. Hopeman Bros.*, 662 So. 2d 640, 646 (Miss. 1995)).  However, manufacturers and sellers only have a duty to warn of dangers known to them at the time the product leaves his or her control.  *See Noah v. GMC*, 882 So. 2d 235, 239 (Miss. Ct. App. 2004), *cert. denied*, 882 So. 2d 772 (Miss. 2004).  Plaintiff must show that at the time the product left the control of the manufacturer or seller, the manufacturer or seller knew or should have known about the danger, and "the ordinary user…would not realize its dangerous condition."  § 11-1-63(c)(i).  The failure

---

[4] The MPLA defines an adequate warning as:

> one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product[.]

§ 11-1-63(c)(ii).

8

to warn must be the proximate cause of the injuries suffered. *3M Co. v. Johnson*, 895 So. 2d

151, 166 (Miss. 2005) (citing *Garner v. Santoro*, 865 F.2d 629, 641–42 (5th Cir. 1989)). That

causal link between the alleged injury and the inadequate warning is key to a plaintiff's claim.

*Id.*

       A claim for failure to warn may be based on a theory of negligence or strict liability.

*O'Flynn v. Owens-Corning Fiberglas*, 759 So. 2d 526, 535 (Miss. Ct. App. 2000). "The strict

liability in tort theory is derived from *State Stove Manufacturing Co. v. Hodges*, and Section

402A of the Restatement (Second) of Torts." *Id.*; *see also Scordino*, 662 So. 2d at 642; *Coca*

*Cola Bottling Co. v. Reeves*, 486 So. 2d 374, 377 (Miss. 1986); *State Stove Mfg. Co. v. Hodges*,

189 So. 2d 113, 118 (Miss. 1966), *cert. denied*, 386 U.S. 912 (1967). By proving the required

elements in a failure to warn cause of action,

> the plaintiff is in effect proving that the defendant was negligent in its failure to
> warn. Hence, even though the cause of action for failure to warn could be based
> on negligence or strict liability in tort, the two theories, while conceptually
> different, often merge into a single breach of duty.

*O'Flynn*, 759 So. 2d at 535. (citation omitted). Section 402A defines who may be liable for a

defective product as follows:

> (1) One who sells any product in a defective condition unreasonably dangerous to
> the user or consumer or to his property is subject to liability for physical harm
> thereby caused...if:
>     (a) the seller is engaged in the business of selling such a product, and
>     (b) it is expected to and does reach the user or consumer without substantial
>     change in the condition in which it is sold.

Restatement (Second) of Torts § 402A (1965). It follows that under § 402A, one who neither

manufactures nor sells the product can be liable under a products liability theory. *Dalton v. 3M*

*Co.*, Civil Action No. 10-113-SLR-SRF, 2013 WL 4886658, at \*8 (D. Del. Sept. 12, 2013),

*report and recommendation adopted*, 2013 WL 5486813 (D. Del. Oct. 1, 2013) (citing *Scordino*,

662 So. 2d at 643) (quoting *Harmon v. Nat'l Auto. Parts Ass'n*, 720 F. Supp. 79, 80 (N.D. Miss. 1989))).

### 3. Bare Metal Defense

Although Mississippi courts have not yet addressed the bare metal defense, this court has previously found that based on the MPLA, § 402A, and case authority that, "it is reasonably likely that the Supreme Court of Mississippi would follow the majority of jurisdictions that have refused to find defendants liable for other manufacturers' asbestos products." *Dalton*, 2013 WL 4886658, at *10 (citing *Murray v. General Motors, LLC*, 478 Fed. App'x 175, 182 (5th Cir. 2012) (there is no post-sale duty to warn under Mississippi law); *Scordino*, 662 So. 2d at 643 (strict liability depends on whether defendant is a manufacturer or seller of a product); *Harmon*, 720 F. Supp. at 80 (strict liability is not imposed on one who neither manufactures nor sells the products)).

The bare metal defense applies to shield defendants from liability for injuries caused by asbestos components where the defendant neither manufactured nor supplied the product that allegedly caused the plaintiff to be exposed to asbestos. *Id.* at *6–7 (citing *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 793 (E.D. Pa. 2012)). Accordingly, courts embracing the principles of the bare metal defense refuse to impose liability upon manufacturers for dangers associated with asbestos-containing products manufactured and distributed by other entities. *Id.* at *7 (citing *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 495 (6th Cir. 2005); *Conner*, 842 F. Supp. 2d at 801; *Surre v. Foster Wheeler LLC*, 831 F. Supp. 2d 797, 801 (S.D.N.Y. 2011); *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 1030 (S.D. Ill. 1989); *O'Neil v. Crane Co.*, 266 P.3d 987, 997–98 (Cal. 2012); *Taylor v. Elliott Turbomachinery Co.*, 90 Cal. Rptr. 3d 414, 429 (Cal. Ct. App. 2009); *In re Asbestos Litig. (Howton)*, C.A. No. N11C-03218 ASB, 2012 WL

1409011, at *1 (Del. Super. Ct. Apr. 2, 2012); *In re Asbestos Litig.* (*Wolfe*), C.A. No. No10C-08-258 ASB, 2012 WL 1415706, at *3–4 (Del. Super. Ct. Feb. 28, 2012); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 498–99 (Wash. 2008); *Simonetta v. Viad Corp.*, 197 P.3d 127, 134–35 (Wash. 2008)). Therefore, a manufacturer is not subject to a duty to warn or protect against hazards arising from a product it did not manufacture, supply, or sell. *Id.* at *10.

## IV. DISCUSSION

Product identification is a threshold question in in this case: Plaintiff must show that Defendants' products proximately caused Mr. Winhauer's injuries. *See Dependable Abrasives, Inc. v. Pierce*, 156 So. 3d 891, 896 (Miss. 2015) (quoting *Banks ex rel. Banks v. Sherwin–Williams Co.*, 134 So. 3d 706, 710 (Miss. 2014)). To survive a motion for summary judgment under Mississippi law, Plaintiff must show that Mr. Winhauer was exposed to Defendants' asbestos-containing products with the requisite frequency, regularity, and proximity. *See Gorman-Rupp Co. v. Hall*, 908 So. 2d 749, 757 (Miss. 2005).

### A. Defendant Honeywell

The court recommends granting Honeywell's motion for summary judgment. Honeywell asserts that the motion should be granted because mere speculation is not enough for Plaintiff to demonstrate frequent, regular, and proximate exposure to asbestos-containing Bendix brakes. (D.I. 197 at 2) Moreover, any exposure that may have occurred is *de minimis*. (*Id.*) Plaintiff responds that Mr. Winhauer was exposed to significant amounts of asbestos as a result of completing twelve brake jobs on personal automobiles with Bendix Brakes, each requiring four to five hours to complete. (D.I. 188 at 16–19) Additionally, the frequency, regularity, and proximity analysis is relaxed in mesothelioma cases. (*Id.*)

11

As explained *supra*, there is no precedent based on Mississippi law to support the assertion that the frequency, regularity, and proximity standard should be relaxed in this case. *See* § III(B)(1). Instead, Plaintiff must show "proof of exposure to the product, on a regular basis, over an extended period of time and in proximity to where [Mr. Winhauer] actually worked." *Gorman-Rupp Co. v. Hall*, 908 So. 2d 749, 757 (Miss. 2005). Additionally, any "inferences must be supported by facts in the record, not by speculation or conjecture." *In re Asbestos Litig. (Dumas),* Civil Action No. 13-229-SLR-SRF, 2015 WL 5766460, at *10 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016).

The Mississippi Supreme Court has found that twenty years of frequent exposure in close proximity to an asbestos containing product was enough to satisfy the frequency, regularity, and proximity standard. *See Phillips 66 Co. v. Lofton*, 94 So. 3d 1051, 1063 (Miss. 2012). In *Dalton*, even though the plaintiff could not recall specifics, testimony regarding general occupational work with and around asbestos-containing products was sufficient to deny summary judgment based on the Mississippi product identification standard. *Dalton v. 3M Co.*, MDL No. 875, E.D. Pa Civil Action No. 2:10-64604, 2011 WL 5881010, at *4 (E.D. Pa. Aug. 2, 2011). Similarly, it was sufficient in a related matter that the plaintiff testified about working with asbestos containing pumps and valves on many occasions, even though he did not know how many times he specifically worked with a manufacturer's brand. *Dalton v. 3M Co.*, MDL No. 875, E.D. PA Civil Action No. 2:10-64604, 2011 WL 5881011, at *1 (E.D. Pa. Aug. 2, 2011). However, in *Lohrmann*, followed by the Mississippi Supreme Court in adopting the frequency, regularity, and proximity standard, the court found that exposure to an asbestos containing product ten to fifteen times during the course of employment was not sufficient to

raise a permissible inference of causation. *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1163 (4th Cir. 1986).

Mr. Winhauer testified that he worked on the brakes of his vehicles twelve times. (D.I. 188, Ex. 1 at 60:7–81:19) He identified that some of the brakes he used were Bendix brand, as he remembered that the name was stamped on the product. (*Id.*, Ex. 2 at 165:10–18) However, he also testified to using remanufactured brakes, and he did not know how often he used what brand. (*Id.* at 166:11–167:2) He could not recall how many times he worked specifically with Bendix brakes, and he could not provide any details about that general use, including the car on which he installed them. (*Id.* at 168:5–19) Consequently, the court is left with guessing whether Mr. Winhauer was exposed to asbestos-containing Bendix brakes one time, or up to twelve times.

Unlike *Phillips*, there is no evidence that Mr. Winhauer was regularly exposed to Bendix brakes over a prolonged period of time. *See* 94 So. 3d at 1063. Additionally, in contrast to the *Dalton* cases, there is no assertion that Mr. Winhauer's exposure to Bendix brakes occurred in a general or regularly established manner. *See* 2011 WL 5881010; 2011 WL 5881011. Rather, the facts are more akin to *Lohrmann* because the record indicates that Mr. Winhauer could have been exposed to asbestos-containing brakes up to twelve times, and likely less, because Mr. Winhauer testified to using remanufactured brakes on some of his projects. *See* 782 F.2d at 1163. (D.I. 188, Ex. 1 at 166:11–168:19) Plaintiff's assertion that Mr. Winhauer used Bendix brakes on each brake job (twelve times), is an inference only supported by speculation, and the court may not rely on mere speculation to find sufficient exposure. *See In re Asbestos Litig. (Dumas),* Civil Action No. 13-229-SLR-SRF, 2015 WL 5766460, at *10 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016). The court may grant

13

summary judgment on the instant record wherein the evidence is merely colorable, or it is not significantly probative. *Clark v. Welch*, Civ. NO.14-029-SLR, 2016 WL 859259, at *2 (D. Del. Mar. 3, 2016). Consequently, there is no genuine issue of material fact as to the frequency, regularity, and proximity of Mr. Winhauer's exposure to Bendix Brakes, so the court recommends granting summary judgment in Honeywell's favor.

## B. Defendant Ingersoll

The court recommends granting Ingersoll's motion for summary judgment. Ingersoll asserts that it is speculative to assume that the air compressors at issue were manufactured by Ingersoll. (D.I. 168 at 7) Further, there is no evidence that Mr. Winhauer was exposed to asbestos from working with the air compressors at issue. (*Id.*) Plaintiff responds that cumulative exposure to Ingersoll's air compressors, despite Mr. Winhauer's "mistaken" identification of Allis Chalmers as the compressor manufacturer, is sufficient to satisfy the frequency, regularity, and proximity test under a lessened standard for mesothelioma cases. (D.I. 189 at 13–14)

As previously addressed, there is no basis to alter the frequency, regularity, and proximity standard in this case. Accordingly, "the mere proof that the plaintiff and a certain asbestos product are at the shipyard at the same time, without more, does not prove exposure to that product." *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162 (4th Cir. 1986).

In the present action, Mr. Winhauer's testimony was internally inconsistent. He testified that he performed much work on air compressors—at least once a year—including rebuilding them and replacing gaskets. (D.I. 188, Ex. 1 at 41:19–42:7, 39:8–21) He could not recall who manufactured the air compressors, but he responded affirmatively when his counsel asked him if it was Ingersoll. (*Id.* at 40:6–11) However, later, he specifically testified that the air compressors were manufactured by Allis Chalmers, and he did not do any gasket work to the compressors.

14

(*Id.*, Ex. 2 at 150:24–151:8) He said he knew they were Allis Chalmers compressors because he was "absolutely" sure that the name "was written right on them." (*Id.* at 151:9–14) However, on re-direct, when asked if the compressors were manufactured by Allis Chalmers or Ingersoll, Mr. Winhauer testified that he was "pretty sure" they were all manufactured by Ingersoll. (*Id.* at 170:24–171:14) Plaintiff cannot create an issue of material fact by citing to inconsistencies in Mr. Winhauer's testimony. *See Walkup v. Air & Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2014 WL 2514353, at *5 n.9 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014) (citing *Stevens v. 3M Bus. Prods. Sales,* 2011 WL 6444950, at *1 n.1 (E.D. Pa. July 26, 2011)).

However, assuming for arguments sake that Mr. Winhauer affirmatively identified working with Ingersoll compressors, there is insufficient evidence in the record of frequency, regularity, and proximity to asbestos during his work with such compressors. Mr. Winhauer testified that he could not recall what the gaskets were made of, whether it was rubber, cork, or fiber. (*Id.*, Ex. 1 at 42:9–12) Even if original Ingersoll gaskets did contain asbestos, there is no evidence that Mr. Winhauer was exposed to original gaskets, as he testified that all of the compressors had been overhauled before he ever starting working at Courtaulds. (*Id.*, Ex. 2 at 105:25–10, 147:11–19) Additionally, he did not work on compressors until a couple years or more after he started working at Courtaulds. (*Id.*) Pursuant to the MPLA and the bare metal defense, Ingersoll is not responsible for asbestos-containing products, including gaskets, for which it did not manufacture or sell. *See* Miss. Code Ann. § 11-1-63(a) (2014); *Dalton v. 3M Co.*, Civil Action No. 10-113-SLR-SRF, 2013 WL 4886658, at *4–7 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (D. Del. Oct. 1, 2013). Plaintiff cannot establish that Mr. Winhauer was exposed to an asbestos-containing Ingersoll product with the

requisite frequency, regularity, and proximity.  Therefore, the court recommends that Ingersoll's

motion for summary judgment be granted.

## V.    CONCLUSION

For the foregoing reasons, the court recommends granting the summary judgment motions

filed by Honeywell International, Inc. and Ingersoll Rand Co.  (D.I. 165, 175)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.  Fed.

R. Civ. P. 72(b)(2).  The objection and responses to the objections are limited to ten (10) pages

each. The failure of a party to object to legal conclusions may result in the loss of the right to de

novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir.

2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.


Dated: August _9_, 2016

Sherry R. Fallon
United States Magistrate Judge